

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

15 MAY 11 PM 2:53

OFFICE OF THE CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

# PRO SE CIVIL COMPLAINT – AMENDED

**Case No.** 815-CV 00088
(the court will assign a number)

## I. CASE CAPTION: Parties to this Civil Action:

Pursuant to Fed. R. Civ. P. 10(a), the names of **all** parties must appear in the case caption. The court will **not** consider a claim against any defendant who is not listed in the caption.

A. Plaintiff(s) Name(s): Address(es): Telephone No. (only if **you are NOT** a prisoner)

Heather Hosenshank

~~Lisa Sheff~~

B. Defendant(s) Name(s): Address(es) If known:

1. STATE of Nebraska
2. Cps
3. Ryan marTin
4. Dale Weis

(Attach extra sheets if necessary.)

Hasenbank vs State of Nebraska, CPS Ryan 8:15-CV 00088

## JURISDICTIONAL STATEMENT

Appellee, Heather Hasenbank (Mother) accepts the Appellants statement of jurisdiction with the following exceptions:

a. Appellant Donald Monroe, (Father) filed his notice of appeal on October 23, 2014, not October 28, 2014.

b. Appellee, Heather Hasenbank, (Mother) filed her notice of appeal of the Order described in Appellant's statement of Jurisdiction, on October 24, 2014. The Order granting Appellee Heather Hasenbank to proceed In Forma Pauperis was signed and filed October 24, 2014.

## STATEMENT OF THE CASE

Appellee, Heather Hasenbank, (Mother) accepts Appellant's Statement of the Case.

## PROPOSITIONS OF LAW

1. At the adjudication stage, in order for a juvenile court to assume jurisdiction of minor children under *Nebraska State Statute §43-247 (3) (a)* the State must prove the allegations of the petition by a preponderance of the evidence

*In re Interest of B.R. et al.*, 270 Neb. 685 (2005)

*In re Interest of Rebekah T. et al.*, 11 Neb. App. 507 (2002)

2. Although evidence presented shows the parents had consumed alcohol...there was no evidence presented of the children being in harm or lacking proper care as a result of the drinking.

*In re Interest of Brianna B. and Shelby B.* 9 Neb. App. 529 (2000)

3. Impermissible or improper evidence is not considered by an appellate court.

*In re Interest of L.H. et al.*, 241 Neb 232 (1992)

4. Improper or Impermissible evidence is that evidence which was properly objected to at trial, but which was erroneously admitted. Improper admission of evidence by the trial court in a juvenile court proceeding does not, in and of itself, constitute reversible error; a

showing of prejudice must be made.

*In re Interest of D.S. and T.S.* 236 Neb. 413 (1990)

*In re Interest of Brianna B. and Shelby B.*, 9 Neb. App. 529 (2000)

5. For purposes of this section, a child is of mandatory attendance age if the child (a) will reach six years of age prior to January 1 of the then-current school year and (b) has not reached eighteen years of age.

*Nebraska Revised Statues §79-201*

6. ...The Juvenile court in each county shall have jurisdiction of: (3) any juvenile (a) who is homeless or destitute, or without proper support through no fault of his or her parent, guardian, or custodian; who is abandoned by his or her parent, guardian, or custodian; who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian; whose parent, guardian, or custodian neglects or refuses to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such juvenile; whose parent, guardian, or custodian is unable to provide or neglects or refuses to provide special care made necessary by the mental condition of the juvenile; or who is in a situation or engages in an occupation, including prostitution, dangerous to life or limb or injurious to the health or morals of such juvenile, (b) who, by reason of being wayward or habitually disobedient, is uncontrolled by his or her parent, guardian, or custodian; who deports himself or herself so as to injure or endanger seriously the morals or health of himself, herself, or others; or who is habitually truant from home or school, or (c) who is mentally ill and dangerous as defined in section 71-908 ;

*Nebraska Revised Statutes §43-247 (3)(a)*

7. ...When a juvenile is taken into temporary custody pursuant to subdivision (2) or (7) of section 43-248 , the peace officer shall deliver the custody of such juvenile to the Department of Health and Human Services which shall make a temporary placement of the juvenile in the least restrictive environment consistent with the best interests of the juvenile as determined by the department. The department shall supervise such placement and, if necessary, consent to any necessary emergency medical, psychological, or

psychiatric treatment for such juvenile. The department shall have no other authority with regard to such temporary custody until or unless there is an order by the court placing the juvenile in the custody of the department. If the peace officer delivers temporary custody of the juvenile pursuant to this subsection, the peace officer shall make a full written report to the county attorney within twenty-four hours of taking such juvenile into temporary custody. If a court order of temporary custody is not issued within forty-eight hours of taking the juvenile into custody, the temporary custody by the department shall terminate and the juvenile shall be returned to the custody of his or her parent, guardian, custodian, or relative...

*Nebraska Revised Statutes §43-250(2)*

## STATEMENT OF FACTS

Appellee Heather Hasenbank, (Mother) accepts Appellant's Statement of Facts with the following exceptions:

Jordan Monroe and Miley Monroe,(hereinafter "the Children") were removed from the parent's home on March 7, 2014 (145:18-20). On March 7, 2014 NHHS caseworker Stacia Nelson informed Mother that there was an Order to remove the children from the home. (118: 17-20) Mother asked for the paperwork. ( 60: 10-13) It was not provided and Mother told Stacia Nelson to "Get a Warrant". (118: 17-25) Stacia Nelson told Mother that if she did not let them take the kids "It would be longer before they had a chance to see them" (Ryan Martin testimoney (62:2-11).

## SUMMARY OF ARGUMENT

Appellee, Heather Hasenbank agrees with the summary and arguments presented by the Appellant. In addition, Heather Hasenbank asserts that the Trial Court erred in adjudicating this matter due to irregularities, false statements and exaggerations of Law Enforcement and Health and Human Services Representatives in the allegations against the parents and removal of the children. Further the trial Court allowed, over objection irrelevant evidence which was not credible in the adjudication and highly prejudicial to the Appellant.

## ARGUMENT

**THE JUVENILE COURT ERRED WHEN IT ADJUDICATED THE MINOR CHILDREN PURSUANT TO NEB. REV. STAT. 43-247 (3) (A) BECAUSE THERE WAS NO EVIDENCE AT TRIAL OF DEFINITE HARM OR FUTURE RISK TO THE MINOR CHILDREN.**

This case began with a report from Head Start worker regarding a black eye suffered by Jordan Monroe. No pictures or medical records were offered regarding this injury and evidence presented showed no medical attention was necessary (50:9-13). There was no evidence presented that the black eye that started this case occurred other than what was reported by the parents. There was evidence of a report from the Mother regarding a prior injury to Jordan that occurred at the school. (E1) (78:3-25) (791-25) (80:1-5) Further, there was no evidence that the parents caused or inflicted any type of injury to Jordain. The State presented no evidence of physical injury to Miley Monroe. There was no emergency related to this injury. The state failed to establish a causal link between the supposed injuries and the fault or habits of the parents. As a result the Court should lack jurisdiction.

In this case the State attempted to excuse the action of HHS in removing the children by identifying past behavior of moving of the parents to show some future risk of harm to the children. There was no real evidence presented that the children were put at risk by the parents moving within a three county area in Nebraska or past involvement with State agencies. There was testimony that the most of the moves were related to financial or safety reasons. Two of these past caseworkers Bethany Walker (224 - 232) and Ashley Gordon (186-193) testified that they believed the children were safe. The state did not present evidence that the parents transient lifestyle at this time was likely to harm the children in the future. The evidence did show that the parents were able access services when they moved .

**THE JUVENILE COURT WAS IN ERROR WHEN IT ADMITTED THE TESTIMONY OF TERRI LANGAN -DEE BECAUSE MS LANGAN DEE'S TESTIMONY WAS NOT RELEVANT TO THE ALLEGATIONS CONTAINED IN THE PETITION.**

The Court received evidence in the testimony of Terri Langan Dee over objections to by Heather Hasenbank and Donald Monroe. The Court, in its adjudication ruling found Ms. Langan Dee's testimony most probative in this case. The evidence shows that Ms Langan Dee had nothing to do with the children until May 2014, two months after the removal of the children from their parents. Her testimony further states she has never met the parents and has not observed the parents with the children. (29 :7-20). Ms Langan Dee further stated she was not aware of the bond between the parents and the children. (29:7-14). She further testified she has not discussed the parents with the children, (35:7-10). She testified about what she has observed with the children and reports that she received from the foster parents. She testified about progress made by the children in using utensils and potty training but she had no knowledge about if the children used utensils prior to their removal or if the parents were in the process of potty training. (30 : 22-25) (31: 1-9),( 32:20-25) (33: 1-8). Her testimony indicated the children were making progress in therapy. She further stated that the progress could be because the children are not subject to trauma. She could not state what that trauma may be. It could be removal from the parents, anger at the parents for not seeing them. Continuous travel from the foster home to parents and back again. ( 29: 3-10), ( 29:21-25) (30: 3-21), ( 34: 10-24). What is clear in Ms Langan-Dee's testimony is that she is working with the children and they appear to be comfortable with her and able to play with her. Ms. Langan-Dee does not know what the "trauma" was that the children were experiencing that they are not now experiencing. It is common sense that the children would have experienced trauma in being removed from their parents, shuttled to a foster home, shuttled back and forth to visitations with the parents five or more times per week, being fully supervised by strangers each visitation day, suddenly not seeing their parents and not knowing why. Ms Langan-Dee came into this case two months after the removal of the children from the parents. She did not know the children prior to May 2014. She knows nothing of the parents other than the information provided by Health and Human Services in their referral. She has not observed the children with the parents. She has not asked for information from the parents about their thoughts or observations of the children. Ms Langan-Dee's information is so far in time from the removal and may be attributable to so many different events that her testimony is irrelevant to the adjudication, not credible as to the purpose of the adjudication and highly prejudicial to the

parents of the minor children. The evidence may be appropriate in a disposition but is too far removed to be relevant to the adjudication. The Court's have held, "Improper or Impermissible evidence is that evidence which was properly objected to at trial, but which was erroneously admitted. Improper admission of evidence by the trial court in a juvenile court proceeding does not, in and of itself, constitute reversible error; a showing of prejudice must be made. *In re Interest of D.S. and T.S.* 236 Neb. 413, 461 N.W. 2nd 415 (1990). The Court of Appeals in *In re Interest of L.H. et al.* 241 Neb. 232 487 N.W. 2nd 279 (1992) stated "Impermissible or improper evidence is not considered by an appellate court. The trial Court erred in overruling the objections to the testimony of Terri Langan-Dee and said testimony should not be considered by the Court of Appeals.

## CONCLUSION

For the above reasons and those shown in the Cross Appeal brief below. Appellee, Heather Hasenbank, (Mother requests that this Court reverse the decision of the Juvenile Court as to both Donald Monroe and Heather Hasenbank and remand with directions to dismiss the Petition against Appellant and Appellee Heather Hasenbank.

## BRIEF OF CROSS APPELLANT, HEATHER HASENBANK

## JURISDICTIONAL STATEMENT

Final orders from the County Court sitting as Juvenile Court are appealed to the Nebraska Court of Appeals per *Nebraska Revised Statute §43-2,106.01*.

The Order that is appealed herein is an adjudication order from the Petitions filed by the State of Nebraska on March 10, 2014.

The Adjudication Order was entered by the Court and filed on September 25, 2014. The notice of appeal by Heather Hasenbank was filed on October 24, 2014.

Order granting appellant to proceed In Forma Pauperis signed and filed October 24, 2014.

## STATEMENT OF THE CASE

Appellee/Cross Appellant, Heather Hasenbank and Appellant Donald Monroe are the parents of two minor children, Jordan M. Monroe, born April 27, 2009 and Miley M. Monroe, born March 1, 2011. On March 7, 2014 Jordan M. Monroe and Miley M. Monroe were removed from their parents at the direction of Stacia Nelson, Heath and Human Services Protection and Safety Worker and placed in the custody of State of Nebraska Health and Human Services. A motion for Ex Parte Order for Temporary Custody was filed by the Deputy Saunders Attorney on March 10, 2014. An Ex parte Order for Temporary Custody was signed by the County Judge on March 10, 2014. Juvenile Petitions were filed by the Deputy Saunders County Attorney on March 10, 2014. Amended Petitions were filed on August 13, 2014. Adjudication hearings were held on August 14, 2014. An Order finding that the Children were ones as described in *Neb Rev. Stat. 43-247(3) (a)* And that the Court has jurisdiction of the parties and the subject matter was entered on September 25, 2014 by Patrick McDermott, Saunders County Judge. The Court did not find the parents "at fault". Appellee/Cross Appellant Heather Hasenbank and Appellant Donald Monroe each filed Notices of appeal of the Adjudication Ruling.

## STATEMENT OF ERRORS

1. The Court erred in adjudicating this matter due to the states violation of *Neb. Rev. Stat. §43-250 (a).*
2. The State did not prove the allegations of the Petitions by a preponderance of the evidence.
3. The Court erred in allowing the testimony of Terri Langan-Dee and overruling objections by Appellee/Cross Appellant.

Testimony of Terri Langan-Dee, a therapist for the children several months after the removal was allowed over objection when the testimony was irrelevant to the adjudication, not credible to adjudication and highly prejudicial to the parents.

4. The Court erred in finding that the children are ones as described in *Nebraska Revised Statutes Section 43- 247 (3)(a)* and Ordering Jurisdiction over the parties and the subject matter.

The Court found the testimony of Terri Langan-Dee as the "most probative" in this case. We believe the Court erred in allowing Ms. Langan Dee's testimony and if such testimony is stricken the adjudication will be reversed.

5. The Court erred in adjudicating this matter due to the states violation of *Neb. Rev. Stat. §43-250 (a).*

In this case the Health and Human Services caseworker, Stacia Nelson removed the children by advising the parents she had a Court Order to remove the children. The Courts record shows no such Court Order listed on March 7, 2014, and said Order was not filed or ordered until March 10, 2014 (E 9:145-147) (E 10:145-147). *Nebraska Revised Statutes §43-250(2)* states "If a court order of temporary custody is not issues within forty eight hours of taking the juvenile into custody, the temporary custody of the department shall terminate and the juvenile shall be returned to the custody of his or her parent, guardian, custodian or relatives. The children were not returned to the parents on March 9, 2014, per the statute. Law enforcement and Health and Human Services violate Ms. Hasenbanks due process by their actions.

**PROPOSITIONS OF LAW**

1. At the adjudication stage, in order fo a juvenile court to assume jurisdiction of minor children under *Nebraska State Statute §43-247 (3) (a)* the State must prove the allegations of the petition by a preponderance of the evidence

*In re Interest of B.R. et al.*, 270 Neb. 685 (2005)

*In re Interest of Rebekah T. et al.*, 11 Neb. App. 507 (2002)

2. Although evidence presented shows the parents had consumed alcohol...there was no evidence presented of the children being in harm or lacking proper care as a result of the drinking.

*In re Interest of Brianna B. and Shelby B.* 9 Neb. App. 529 (2000)

3. Impermissible or improper evidence is not considered by an appellate court.

*In re Interest of L.H. et al.*, 241 Neb 232 (1992)

4. Improper or Impermissible evidence is that evidence which was properly objected to at trial, but which was erroneously admitted. Improper admission of evidence by the trial

court in a juvenile court proceeding does not, in and of itself, constitute reversible error; a showing of prejudice must be made.

*In re Interest of D.S. and T.S.* 236 Neb. 413 (1990)

*In re Interest of Brianna B. and Shelby B.*, 9 Neb. App. 529 (2000)

5. For purposes of this section, a child is of mandatory attendance age if the child (a) will reach six years of age prior to January 1 of the then-current school year and (b) has not reached eighteen years of age.

*Nebraska Revised Statues §79-201*

6. ...The Juvenile court in each county shall have jurisdiction of: (3) any juvenile (a) who is homeless or destitute, or without proper support through no fault of his or her parent, guardian, or custodian; who is abandoned by his or her parent, guardian, or custodian; who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian; whose parent, guardian, or custodian neglects or refuses to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such juvenile; whose parent, guardian, or custodian is unable to provide or neglects or refuses to provide special care made necessary by the mental condition of the juvenile; or who is in a situation or engages in an occupation, including prostitution, dangerous to life or limb or injurious to the health or morals of such juvenile, (b) who, by reason of being wayward or habitually disobedient, is uncontrolled by his or her parent, guardian, or custodian; who deports himself or herself so as to injure or endanger seriously the morals or health of himself, herself, or others; or who is habitually truant from home or school, or (c) who is mentally ill and dangerous as defined in section 71-908 ;

*Nebraska Revised Statutes §43-247 (3)(a)*

7. ...When a juvenile is taken into temporary custody pursuant to subdivision (2) or (7) of section 43-248 , the peace officer shall deliver the custody of such juvenile to the Department of Health and Human Services which shall make a temporary placement of the juvenile in the least restrictive environment consistent with the best interests of the juvenile as determined by the department. The department shall supervise such placement and, if necessary, consent to any necessary emergency medical, psychological, or

psychiatric treatment for such juvenile. The department shall have no other authority with regard to such temporary custody until or unless there is an order by the court placing the juvenile in the custody of the department. If the peace officer delivers temporary custody of the juvenile pursuant to this subsection, the peace officer shall make a full written report to the county attorney within twenty-four hours of taking such juvenile into temporary custody. If a court order of temporary custody is not issued within forty-eight hours of taking the juvenile into custody, the temporary custody by the department shall terminate and the juvenile shall be returned to the custody of his or her parent, guardian, custodian, or relative...

*Nebraska Revised Statutes §43-250(2)*

## STATEMENT OF FACTS

Heather Hasenbank and Donald Monroe are the parents of Jordan Monroe, born April 27, 2009 and Miley Monroe, born March 1, 2011. Both children were born in Omaha, Nebraska. Heather Hasenbank, Donald Monroe have resided in a three county area in Nebraska since 2007. In Feburary 2014 Heather Hasenbank, Donald Monroe and their children moved to Wahoo, Nebraska. Jordan Monroe was enrolled in Head Start as a special education student in February 2014. On March 3, 2014 Jordan Monroe went to school with an old bruise under his eye. Allison Klein, early childhood special education teacher through Wahoo Public Schools and Head Start observed his eye and read the note from Heather Hasenbank that Miley had hit him with a cup. Ms. Klein testified she called the Hotline because Jordan had missed several days and "she felt he was not safe or being kept away from his sister". Stacia Nelson, a protective service worker at Nebraska Department of Health and Human Services was assigned to investigate the intake from hotline call. Ms. Nelson testified she went to see Jordan at school and observed the bruise on his eye. On March 5, 2014, Ms. Nelson went to the home and met the parents and Miley as well as seeing Jordan again. Heather Hasenbank and Donald Monroe both asked for "assistance in parenting and with help with Jordan's behaviors" and "help with Miley so the kids get along". Ms. Nelson testified that she did a safety assessment (E 3:108), which included the history of the parents. Stacia Nelson along with her supervisor determined

that the children were not safe in the home. (110: 14-17). Stacia and her supervisor determined they could put support in the home for the children to maintain in the children in the home and conditionally safe. Stacia Nelson prepared a safety plan (E 11:147, 148) which the parents were provided and signed. The safety plan provided what Health and Human Services was going to do for the family. It did not include any provisions for the parents to do other than cooperate. Stacia Nelson came to the family home twice on March 6, 2014 and twice on March 7, 2014. During this time she talked to the parents about their history and about the services that would be provided in the future per Donald Monroe testimony ( 263 : 9-12) ( 264:7-17). On March 7, 2014, at a drop in visit Stacia Nelson saw a scratch on Jordan's chest. The scratch did not require medical attention. The scratch occurred when Jordan was upstairs away from both parents. Jordan had thrown up that morning so Heather Hasenbank called him in sick to the school. Stacia testified he looked well when she saw him that day but did not know if he had thrown up or not. Stacia Nelson testified that the parents had discussed moving. They discussed that they have a year lease with their home and they would move after that. (116: 1-5). Stacia Nelson testified there were no signs of packing, they did not have a car and there was no public transportation for them in Wahoo. Despite this information Stacia Nelson was concerned the family was going to move. The family had a history of moving in a three county area (Douglas, Dodge and Saunders Counties). Stacia Nelson and her supervisor determined that the children would be removed from the home. Stacia Nelson and officer Ryan Martin went to the Hasenbank-Monroe home to remove the children. Stacia Nelson informed Heather Hasenbank that there was an Order to remove the children from the home. Stacia Nelson did not provide the parents with a copy of any order. Heather Hasenbank asked for the paperwork. When that was not provided she told Ms. Nelson and Officer Martin to get a warrant. Stacia Nelson told Heather Hasenbank that if she did not let them take the kids "it would be longer before they had a chance to see them." (Ryan Martin testimony (62: 2-11). After some time Don Monroe let Stacia Nelson and Ryan Martin in to the home to take the children. The Court file and exhibits 9 and 10 (E 9:145-147) (E 10:145-147) show that Stacia Nelson did not have any paperwork because there was no Motion or Order to take the kids as stated by Ms. Nelson until March 10, 2014, three days after the children were removed.

The history of this family does show that Heather Hasenbank had children removed in the state of Michigan many years before and she either relinquished her parental rights or her rights were terminated when the children were babies due to homelessness and abusive relationships. The history also shows that this family has been under constant supervision by Health and Human Services since Jordan's birth due to the family history and the parents intellectual capacities. Testimony of past workers with the family show cooperation on a voluntary basis but also parent's anxiety about involvement with Health and Human Services because if Ms. Hasenbank's Michigan history. History also shows regular medical appointments for the Monroe children and although the family moved many times they were never homeless.

## SUMMARY OF ARGUMENT

The Trial Court erred in adjudicating this matter due to irregularities, false statements and exaggerations of Law Enforcement and Health and Human Services Representatives in the allegations against the parents and removal of the children. Further the trial Court allowed, over objection irrelevant evidence which was not credible in the adjudication and highly prejudicial to the Appellee/Cross Appellant.

## ARGUMENT

### The Court erred in adjudicating this matter due to the states violation of *Neb. Rev. Stat. §43-250 (a)*.

In this case the Health and Human Services caseworker, Stacia Nelson removed the children by advising the parents she had a Court Order to remove the children. The Courts record shows no such Court Order listed on March 7, 2014, and said Order was not filed or ordered until March 10, 2014 (E 9:145-147) (E 10:145-147). *Nebraska Revised Statutes §43-250(2)* states "If a court order of temporary custody is not issues within forty eight hours of taking the juvenile into custody, the temporary custody of the department shall terminate and the juvenile shall be returned to the custody of his or her parent, guardian, custodian or relatives. The children were not returned to the parents on March 9, 2014, per the statute. Law enforcement and Health and

Human Services violate Ms. Hasenbanks due process by their actions.

**The State did not prove the Allegations in the Petitions by a Preponderance of the Evidence**

The state failed to prove the allegations in the Petition. Going through the Petition paragraph by paragraph, I.A. Officer Chuck Lacy did not testify. There was testimony by witnesses including Donald Monroe that Jordon Monroe did hit Miley Monroe with a coffee cup. There was no testimony that it subsequently shattered and evidence where that information came from. Ryan Martin did not testify about any statements made about Jordon's injury . The testimony of Alison Klein clearly shows that an injury did occur on the playground on February 21, 2014 as well as Exhibit 2 (E 2:77, 80). The testimony of Ms. Klein, Mr. Monroe and Stacia Nelson shows that Jordon was injured at the school and this was not the same injury as coffee cup incident. The evidence shows that Ms. Nelson jumped to an unreasonable conclusion that Ms. Hasenbank was talking about the same incident when discussing the fall at the school. Paragraph 1A was not proven.

Assistant Chief Dale Weis testified he had never met Heather Hasenbank until the day of trial and had not talked to her. Stacia Nelson testifed about the allegations in paragraph 1B. Donald Monroe specifically denied that the allegations in Paragraph 1B other than that Jordon had a scratch on his chest that did not need medical attention. The allegations on in Paragraph 1B were clearly not proven.

There was testimony that Jordon Monroe is developmentally delayed as stated in Paragraph 1C and that and IEP was developed at sometime. There was no evidence provided about Fremont Public Schools. Further there was testimony by Alison Klein that there is no requirement that a child go to school before the age of five. See *Nebraska Revised Statutes §79-201*. Paragraph 1C was partially proven but in the three days that Stacia Nelson was involved Jordon was sick one day due to throwing up. Stacia Nelson had no evidence that Jordon had not been ill. Again, Ms. Nelson jumped to an unreasonable conclusion that Jordon would not go to school. Ms Nelson did not make the school attendance part of safety plan for some unknown reason. The parents did not violate the safety plan by keeping Jordon home from preschool

because he was sick.

The evidence did show the family was itinerant, but as Ms. Nelson testified the family remained in a three county area in Nebraska.. The evidence shows that there were prior unfounded CPS investigations on the family and testimony of Bethany Walker and Ashley Gordon from Douglas and Dodge County Child Protective Services organizations was that the Heather Hasenbank and Donald Monroe cooperated and participated in services for the family. Bethany Walker testifed about the appropriate reasons for moving and even assisted Heather Hasenbank in finding he home in Wahoo. The state failed to prove that the family refused to cooperate. The state did introduce evidence regarding Ms. Hasenbank's prior relinquishments and terminations of infants in Michigan. However the state did not provide the linkage between the removal of these infants from Ms. Hasenbank, who was homeless, and the present cases. Put differently, the State failed to show the relevance of these prior matters to the adjudication. (*In re Interest of Brianna B. And Shelby B.*, 9 Neb. App. 529, 533 (2000), the Nebraska Court of Appeals held that a parent's alcoholism, without more, was insufficient for the juvenile court to adjudicate his children. The Court reasoned that while the record demonstrated that the father was an alcoholic, who continued to drink, it did not show that the father's drinking negatively impacted his children. Likewise, in the present matter, the State only demonstrated the mere fact that Ms. Hasenbank had her parental rights terminated or relinquished her parental rights to infants with respect to certain of her children. The State made no showing of the specific facts attendant to these prior cases, and therefore failed to show that these prior cases are relevant to this adjudication. Paragraph 1D was not proven.

Evidence was adduced that Donald Monroe [illegible] Registration Act and that he had children removed from their Mother in Iowa due to a dirty house. There was no evidence showing the relevance of these prior matters and the present cases per *In re Interest of Brianna B. And Shelby B.*, 9 Neb. App. 529, 533 (2000). Paragraph 1 E was not proven.

The Nebraska Supreme Court and the Nebraska Court of Appeals have both ruled that At the adjudication stage, in order for a juvenile court to assume jurisdiction of minor children under *Nebraska Revised Statute § 43-247(3) (a)*, the State must prove the allegations of the petition by a

preponderance of the evidence. *In re Interest of B.R. et al.*, 270 Neb. 685, 708 N.W. 2nd 586 (2005); *In re Interest of Rebekah T. Et al*,. 11Neb App. 507, 654 NW 2nd 744 (2002). The state failed to present evidence proving the allegations of the petition that would allow the Court to assume jurisdiction.

**The Court Erred in Allowing the Testimony of Terri Langan Dee and Overruling Objections to Her Testimony.**

The Court received evidence in the testimony of Terri Langan Dee over objections to by Heather Hasenbank and Donald Monroe. The Court, in its adjudication ruling found Ms. Langan Dee's testimony most probative in this case. The evidence shows that Ms Langan Dee had nothing to do with the children until May 2014, two months after the removal of the children from their parents. Her testimony further states she has never met the parents and has not observed the parents with the children. (29 :7-20). Ms Langan Dee further stated she was not aware of the bond between the parents and the children. (29:7-14). She further testified she has not discussed the parents with the children, (35:7-10). She testified about what she has observed with the children and reports that she received from the foster parents. She testified about progress made by the children in using utensils and potty training but she had no knowledge about if the children used utensils prior to their removal or if the parents were in the process of potty training. (30 : 22-25) (31: 1-9),( 32:20-25) (33: 1-8). Her testimony indicated the children were making progress in therapy. She further stated that the progress could be because the children are not subject to trauma. She could not state what that trauma may be. It could be removal from the parents, anger at the parents for not seeing them. Continuous travel from the foster home to parents and back again. ( 29: 3-10), ( 29:21-25) (30: 3-21), ( 34: 10-24). What is clear in Ms Langan-Dee's testimony is that she is working with the children and they appear to be comfortable with her and able to play with her. Ms. Langan-Dee does not know what the "trauma" was that the children were experiencing that they are no now experiencing. It is common sense that the children would have experienced trauma in being removed from their parents, shuttled to a foster home, shuttled back and forth to visitations with the parents five or more times per week, being fully supervised by strangers each visitation day, suddenly not seeing their parents and not knowing why. Ms Langan-Dee came into this case two months after the removal of the children from the parents.

She did not know the children prior to May 2014. She knows nothing of the parents other than the information provided by Health and Human Services in their referral. She has not observed the children with the parents. She has not asked for information from the parents about their thoughts or observations of the children. Ms Langan-Dee's information is so far in time from the removal and may be attributable to so many different events that her testimony is irrelevant to the adjudication, not credible as to the purpose of the adjudication and highly prejudicial to the parents of the minor children. The evidence may be appropriate in a disposition but is too far removed to be relevant to the adjudication. The Court's have held, "Improper or Impermissible evidence is that evidence which was properly objected to at trial, but which was erroneously admitted. Improper admission of evidence by the trial court in a juvenile court proceeding does not, in and of itself, constitute reversible error; a showing of prejudice must be made. *In re Interest of D.S. and T.S.* 236 Neb. 413, 461 N.W. 2nd 415 (1990). The Court of Appeals in *In re Interest of L.H. et al.* 241 Neb. 232 487 N.W. 2nd 279 (1992) stated "Impermissible or improper evidence is not considered by an appellate court. The trial Court erred in overruling the objections to the testimony of Terri Langan-Dee and said testimony should not be considered by the Court of Appeals.

**The Court Erred in Finding by a Greater Weight of the Evidence that the children are Ones as Described in *Neb. Rev. Stat. 43-247(3)(a)* And that the Court has jurisdiction of the parties and the subject matter**

The Court erred in adjudicating the children as ones as described in *Neb. Rev. Stat. 43 - 247 (3) (a)*. As shown by the arguments stated above this matter should not have been adjudicated. This case is Health and Human services actions in pursuing removal of the Monroe children was over reaching at it worst. This is every parent's nightmare that their children will be taken from them for no good reason. The actions of Stacia Nelson and Nebraska Department of Health and Human Services as well as law enforcement in this case harkens back to a barbaric history of grabbing children from their parents that our Constitution and Statutes were meant to protect against. These children are out of their parent's care because of their history and an out of

control HHS worker not because of any situation present in March 2014. The start of this case is a cluster of errors and false and inconsistent statements and actions. It boggles the mind to think that Health and Human Services could remove children with so little factual evidence and then only a month later, a conversation going on between the HHS supervisor and legal department about terminating the parental rights of Ms. Hasenbank and Mr. Monroe. (E 12:178-180). It is scary to think that Health and Human Services can wield this kind of power without cause. The actions of Health and Human Services in this case were over reaching at best and illegal at worst. If this adjudication is allowed it will cause fear to any parent whose children sometimes fight or child is bruised. Further if this adjudication is allowed it will have a chilling effect and deterrent for any parent contacting Health and Human Services for voluntary services in the future.

CONCLUSION

Appellee/Cross Appellant, Heather Hasenbank has shown that the State did not meet its burden of proof in this case and has provided more than sufficient evidence to the Court that the State did not prove the allegations in the petitions by a preponderance of the evidence, the trial Judge erred in overruling the objections of Heather Hasenbank and considering the testimony of Terri-Langan Dee and in Adjudicating the children and taking jurisdiction of the parties and the subject matter. Appellee/Cross Appellant Heather Hasenbank respectfully requests that the decision of the Saunders County Court be reversed and ordered dismissed.

Respectfully Submitted

Heather Hasenbank
Appellee/Cross Appellant/ Parent

Heather Hasenbank 5-11-15

Melissa Lang Schutt, #17729
Attorney for Appellee/ Cross Appellant/Parent
Fornoff & Schutt PC
1627 East Military Ave.
Fremont, NE 68025
(402) 721-3037

387 N Chestnut
SS 68066

402
443-4976

605 747 2881